UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES, LLC, MAO-MSO RECOVERY II, LLC, SERIES PMPI, and MSPA CLAIMS I, LLC, | |
| Plaintiffs, | Case No. 3:18-cv-2211(BRM)(LHG) |
| vs. | |
| SANOFI-AVENTIS U.S. LLC, NOVO NORDISK INC. and ELI LILLY AND COMPANY | REPORT & RECOMMENDATION OF THE SPECIAL MASTER JUDGE DENNIS CAVANAUGH, RET. |
| Defendants. | |

The matter before the Special Master is a motion filed by Defendants Novo Nordisk, Inc., Eli Lilly and Company and Sanofi-Aventis U.S. LLC ("Defendants") arising out of a discovery dispute. In considering and then deciding this motion, the Special Master has reviewed the Defendants' briefs and exhibits in support of the motion, Plaintiffs' response which includes a cross-motion and Defendants' reply brief.

The dispute arises out of ongoing negotiations between the parties in an effort to create an ESI (Electronically Stored Information) protocol. For the reasons to be set forth more fully in this Opinion, the Special Master grants Defendants' motion compelling Plaintiffs "to produce the same documents and information from each of their assignors that Defendants would have been entitled to if the assignors had brought the lawsuit themselves." The undersigned denies Plaintiffs' application to "order discovery to be limited to a proportional number of assignors." However, the Special Master grants Plaintiffs' alternative request to compel the parties to meet

and confer "to discuss the manner in which each document production will occur on an assignor-by-assignor basis" with the proviso that the discovery is NOT limited to the subset of assignors proposed by Plaintiffs.

## Procedural History and Statement of Facts

Briefly stated, MSP Recovery Claims, Series, LLC, MAO-MSO Recovery II, LLC, Series PMPI and MSPA Claims I, LLC ("Plaintiffs") are entities who have been assigned claims from 57 Medicare Advantage Plans. Defendants are manufacturers of insulin products. This matter is one aspect of broad, complicated litigation arising out of pricing of those insulin products. Effectively, Plaintiffs claim that they have incurred financial damages resulting from overpayments made on behalf of the plan beneficiaries for the insulin products produced by Defendants.

As noted, the parties are currently in the process of creating an ESI protocol. They have reached an impasse which Defendants feel requires the intervention of the Special Master.

As to that impasse, according to Defendants, Plaintiffs have balked at providing discovery from all of their assignors, meaning the entities who have assigned claims to the Plaintiffs arising out of the alleged overpayments. Defendants couch the Plaintiffs' position as having "refused to accept the concommitment obligation to produce the discovery that those assignors would have been obliged to produce had the assignors asserted the same claims…" According to Defendants, the assignees (meaning Plaintiffs) have argued that in some cases the discovery sought is not within their control and that there are "proportionality" concerns. Hence, they say, Plaintiffs have proposed providing certain discovery from the larger assignor entities but not from smaller entities which have more limited claims.

On the other hand, Plaintiffs urge that this issue is immaterial to the entry of an ESI protocol. Plaintiffs maintain that during several conferences among the litigants that they have proposed an alternative plan to provide documents from a subset of assignors whose payment for insulin products represents about 75 percent of the expenditures of all the assignors. Plaintiffs say they have not *refused* to obtain discovery but have suggested a more proportional response for the present time.

Plaintiffs also emphasize that as to the protocol, they cannot bind their assignors to the obligations contained in the protocol. In other words, a protocol can only bind the parties, not the non-party assignors and therefore Plaintiffs can only be compelled to produce documents they possess.

The Special Master would like to note that neither side adequately describes exactly what Defendants seek to discover. Generally, it appears that Defendants are seeking documentation Plaintiffs will use to support their damage claims but the extent of this documentation and the specifics are not delineated by either party.

### Defendants' Argument

Defendants' position is this. First, citing case law, they maintain Plaintiffs need to provide discovery from their assignors even though they claim to lack control over the documents. Secondly, Defendants say, that even if this absence of control were true, the Assignment Agreements (examples of which have been provided) call for the assignors to provide these documents to the assignees so, in effect, Plaintiffs do have control.

Although the undersigned will discuss this in the Findings, Defendants put particular emphasis on a recently decided matter involving the same Plaintiffs and nearly identical circumstances, *MSP Recovery Claims, Series, LLC vs. Mallinckrodt ARD, Inc.*, 2020 WL

3618679 (N.D. Ill. July 2, 2020). In that matter, the Court ordered the plaintiffs to produce more responsive documents in possession of their assignors largely based upon language contained in the Assignment Agreements.

Defendants request that the Special Master order Plaintiffs to produce the same documents and information "from each of their assignors that Defendants would have been entitled to if the assignors had brought this lawsuit themselves."

### Plaintiffs' Argument

In addition to opposing Defendants' motion, Plaintiffs cross-move for an order limiting discovery to a certain subset of assignors, generally representing, they say, 75 percent of the expenditures claimed by all the assignors. In this vein, Plaintiffs argue that producing discovery from all of the assignors is disproportional to the needs of the case, citing case law generally (but not specifically) addressing the proportionality argument arising out of Federal Rule of Civil Procedure 26.[1] They maintain that it would be costly and time consuming to obtain and provide discovery from all 57 entities and have proposed instead that discovery be limited to ten assignors who have made the most payments for the insulin products (again, approximately 75 percent). If developments reveal the need for additional discovery beyond this subset, "the parties should confer and proceed appropriately then." Plaintiffs assert that small physicians' groups that contract with large MAOs are not likely to have the documents that Defendants have requested such as pharmacy benefit management agreements or formularies. The larger entities would.

---

[1] All subsequent references to a Rule herein are references to a Federal Rule of Civil Procedure.

Plaintiffs also emphasize that during negotiations, they have argued that the protocol could not bind the assignors and have proposed further discussions as to "the manner in which documents from the assignors would be collected."  Despite having attempted to resolve this issue, Plaintiffs say, Defendants ignored the compromise proposal and instead have filed this Motion.

### **Findings**

The Special Master believes that the equities and the case law favor the Defendants' position in this motion.

While Plaintiffs have cited case law generally standing for the proposition that under *Rule* 26(b)(1), discovery must be proportional to the needs of the case, the precedent cited by Defendants directly addresses the quandary here.  That is, what is the discovery obligation of an assignee in producing documents from its assignors?

As Defendants correctly point out, as a general proposition, our courts hold that a party bringing an assigned claim must produce discovery on the same basis to which the defendants would have been entitled if an assignor had brought the claim directly.  A review of the cases cited by Defendants supports this seemingly settled proposition and Plaintiffs do not refute this.  Instead, Plaintiffs principally argue that the discovery sought is disproportional to its need and have offered to produce discovery from a subset of the assignors.

Two cases Defendants cite closely parallel this situation and the court's conclusion in both matters stand for the proposition that an assignee is obligated to provide discovery ostensibly within the control of the assignor irrespective of any difficulty securing that discovery.

In *JP Morgan Chase Bank v. Winnick*, 228 FRD 505 (S.D.N.Y. 2005), the court concluded that the plaintiff assignor was indeed obligated to procure discovery from a number of assignors whose claims were being litigated by the plaintiff, a large banking institution. The assignees consisted of approximately 50 lenders (roughly the number of entities involved in this matter) whose claims were prosecuted by JP Morgan ("JPM") under the authority of a credit agreement. The defendants served a passel of discovery on JPM (document requests, interrogatories, deposition notices) which sought writings and testimony from witnesses in the lender banks' custody and control. The plaintiff asserted that the discovery sought was not in JPM's possession or control, that JPM had no right to demand documents or production of witnesses from the assignees, that the lenders were not parties to the case (and had already transferred their interests) and that it was no more burdensome for the defendants to procure discovery via subpoenas from third parties than it was for JPM. [*Id.* at 506.]

While no "proportionality" argument *per se* was raised by JPM, the circumstances and fundamental issue is similar to the issue here and the court <u>did</u> take into consideration the volume of discovery and the needs of the case. That is, in deciding in favor of the moving defendants, the court noted that the burden of the discovery obligations was "not insubstantial" given that a number of the assignors were located outside the United States and beyond subpoena power and, as to those lenders located in this country, it would be necessary to persuade courts in other districts to enforce the subpoena, a complicated process without guaranty of success. Nevertheless, the court concluded that whatever burden was posed, that burden sat squarely in the lap of the plaintiff who sought to litigate the lenders' claims. As the court stated:

> The claims being asserted are those of the original lenders. They cannot be assigned by an agent or assignee without the

6

> concommitment obligation to produce relevant discovery to Defendants. If the Plaintiff and the assignees failed to obtain rights to insist on cooperation from their assignors…they cannot persuade the lending Banks to cooperate now, this is their problem, not Defendants'.

[*Id.* at 507.]

An even more pointed decision, also cited by Defendants, is *MSP Recovery Claims, Series, LLC v. Mallinckrodt ARD, Inc.*, 2020 WL 3618679 (N.D. Ill. July 2, 2020), a case involving the same Plaintiffs as here and a nearly identical issue.

In *Mallinckrodt*, the defendants, who were accused of artificially inflating the price of Acthar (a drug employed to treat a number of conditions including kidney disease), served production demands for documents in the possession of the assignors (third party payers) to which the plaintiffs objected, insisting that the materials were not in their possession, custody or control. The defendants countered by stating that the assignment agreements provided the plaintiffs with a right to secure these materials and, therefore, effectively transferred ownership upon the assignment. In deciding the motion, the court focused exclusively on the assignment agreements and did not address the equities and fairness argument. Some of those agreements, more clearly than others, conferred upon the plaintiffs the legal right to obtain documents from their assignors. One assignment agreement merely referenced an obligation to supply documents, not a legal right. But the court brushed away all distinctions and found that each of the agreements contained language broad enough to encompass an obligation by the assignors to provide the materials necessary to litigate the claims. The court concluded:

> Because the Assignment Agreements confer upon the Plaintiffs the contractual right to obtain documents from assignors necessary to pursue the assigned claims, Plaintiffs have "control" of such

7

>documents and must produce documents responsive to Defendants' [document demands] that are in possession of the assignors.

[*Id.* at *6.]

The undersigned finds that the case law favors Defendants' motion. Plaintiffs have not cited any precedent squarely to the contrary. Nor do they fully articulate an argument as to *why* it would be unduly burdensome for Plaintiffs, who have contracted with the assignors to advance their claims and should presumably have known the lay of the land before bringing suit, to obtain the requested discovery. Indeed, Plaintiffs even concede that they are not objecting to the production but seek effectively to defer production, i.e., "If…the case reveals that additional discovery from assignor Plans beyond the subset is genuinely probative…the parties should confer and proceed appropriately then." [Plaintiffs' response p. 5.]. Why this is feasible at a later date, but not now, is not articulated beyond Plaintiffs' unattributed assertion that the smaller, less sophisticated assignors are "not likely to have the [requested] documents." Plaintiffs propose producing discovery from 10 of the 57 assignors representing most of the claims so it is evident that these materials are available or have been secured. The Special Master does not think it constitutes a burden to obtain that information from the remaining 47. Further, the representative sampling of assignment agreements produced in support of the motion contain language similar to that of the agreements in *Mallinckrodt* obligating the assignors to cooperate in the litigation and authorizing Plaintiffs to act in the assignors' names to enforce these claims. Indeed, Plaintiffs do not even assert that the agreements are not representative or that under the assignments, they cannot procure documentation in support of this litigation.

The Special Master also believes that Plaintiffs' proportionality argument is misplaced. Plaintiffs made a tactical decision to group the assigned claims which, had they been brought individually, would undoubtedly require complete production of relevant documentation by each of the individual entities. Aggregating the assigned claims does not, *per se*, protect Plaintiffs from responding to appropriate discovery requests. Hence, this is not disproportional or unduly burdensome. And while the subset of assignors from whom Plaintiffs propose to provide discovery represent 75 percent of the alleged damages, the residual 25 percent remains a substantial claim to which Defendants are entitled to discovery.

## Conclusion

For these reasons, the Special Master GRANTS Defendants' motion compelling Plaintiffs to produce the same documents and information from each assignor that Defendants would have been entitled if the assignors had brought the lawsuit themselves; DENIES Plaintiffs' cross-motion to order discovery limited to a subset of assignors; GRANTS Plaintiffs' request to compel the parties to meet and confer "to discuss the manner in which each document production will occur on an assignor-by-assignor basis" PROVIDED that the discovery is NOT limited to the subset of assignors proposed by Plaintiffs.

Date: January 20, 2021

_____
DENNIS M. CAVANAUGH
Special Master

9