**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSP RECOVERY CLAIMS SERIES, LLC, SERIES PMPI, a designated series of MAO-MSO RECOVERY II, LLC, and MSPA CLAIMS 1, LLC,<br>s<br><br>                   Plaintiffs,<br><br>             v.<br><br>SANOFI-AVENTIS U.S. LLC, NOVO NORDISK INC., and ELI LILLY AND COMPANY,<br><br>                 Defendants. | Case No. 2:18-cv-2211 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an appeal by MSP Recovery Claims Series, LLC, Series PMPI, a designated series of MAO-MSO Recovery II, LLC, and MSPA Claims 1, LLC ("Plaintiffs") of Special Master Dennis M. Cavanaugh, U.S.D.J. Ret.'s ("Special Master") Report and Recommendation ("Report") issued on January 20, 2021 (ECF No. 150) pursuant to Federal Rule of Civil Procedure 53(f)(2) and Local Rule 72.1(c)(1) (ECF No. 152). Sanofi-Aventis U.S. LLC, Novo Nordisk Inc., and Eli Lilly and Company ("Defendants") opposed the appeal. (ECF No. 153.) Plaintiffs did not initially reply[1] but filed a Motion for Leave to File a Reply in further

---

[1] On October 22, 2020, this Court entered an order appointing the Honorable Dennis M. Cavanaugh, U.S.D.J., ret, as the Special Master. (ECF No. 127.) That order set forth the briefing schedule in the event any party objected to the Special Master's orders. (*Id.* ¶ 6.) Pursuant to the order, parties were permitted to "object to, move to adopt, or move to modify" an order of the Special Master within 14 days of the order's entry. (*Id.*) A party opposing the objection or motion was required to file a responsive brief within 14 days of the objection or motion's filing, and the moving party "may file a reply to an opposition within 7 days of the day the opposition was filed."

support of its appeal of the Special Master's decision. (ECF No. 157.) This Motion is also before the Court. Having reviewed the parties' submissions filed in connection with the appeal and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Plaintiffs' appeal (ECF No. 152) is **DENIED**, the Special Master's Report (ECF No. 150) is **AFFIRMED**, and Plaintiffs' Motion for Leave to File a Reply (ECF No. 157) is **DENIED AS MOOT**.

## I.    BACKGROUND

There have been a series of opinions[2] issued in this case. Accordingly, the Court will only provide a brief factual background and address the procedural history associated with this appeal.

Plaintiffs are entities who have been assigned claims from 57 Medicare Advantage Plans and Defendants are manufacturers of insulin products. (ECF No. 150 at 2.) The litigation involves allegations that Plaintiffs incurred damages resulting from overpayments made on behalf of the plans' beneficiaries for insulin products manufactured by Defendants. (*Id.*) The narrow issue on appeal arises from a discovery dispute between Plaintiffs and Defendants. The nature of the discovery issue relates to Plaintiffs' position as an assignee of claims and its obligations to engage in discovery as an assignee. The parties were in the process of drafting an electronically stored

---

(*Id.*) Here, the Special Master's Report was filed on January 20, 2021. (ECF No. 150.) Plaintiffs timely filed their objection to the Report on February 3, 2021 (ECF No. 152) and Defendants timely filed an opposition to Plaintiffs' objection on February 17, 2021 (ECF No. 153.) Plaintiffs did not file a reply by February 24, 2021, as required by the order's briefing schedule, and instead filed a Motion for Leave to File a Reply Brief on March 1, 2021, and attached a proposed reply to their Motion (ECF No. 157). For the purposes of this appeal, the Court will consider Plaintiffs' proposed reply.

[2] This Court issued opinions on March 29, 2019 (ECF No. 89) and February 20, 2020 (ECF No. 111).

information ("ESI") protocol and submitted letters to the Special Master concerning the scope of the documents to be produced in discovery.[3]

On November 6, 2020, the Special Master issued a scheduling order in this matter, which, among other things, ordered the parties to meet and confer regarding the preservation and production of ESI and to submit an ESI protocol to the Court. (ECF No. 131.) On November 13, 2020, Defendants filed a letter with the Court indicating the parties had met and conferred on November 12, 2020 to discuss an ESI protocol and propose a confidentiality order. (ECF No. 132.) On November 20, 2020, Defendants again filed a letter informing the Court the parties had agreed on a confidentiality order but had not yet agreed on an ESI protocol. (ECF No. 135.) On December 3, 2020, Defendants filed another letter with the Court reporting the parties had "reached an impasse regarding the scope of [P]laintiffs' duty to obtain and produce documents from their assignors" and requested briefing on the issue. (ECF No. 140.) On December 15, 2020, Defendants filed a letter brief requesting the Special Master order Plaintiffs to produce documents from each of their assignors. (ECF No. 145.) On December 22, 2020, Plaintiffs responded. (ECF No. 146.) On January 20, 2021, the Special Master ordered Plaintiffs to produce documents from each of their 57 assignors. (ECF No. 150.) On February 3, 2021, Plaintiffs filed a brief appealing the Special Master's January 20, 2021 order. (ECF No. 152.) On February 17, 2021, Defendants

---

[3] On March 10, 2021, the Special Master entered an amended case management scheduling order, which required the parties to submit an ESI protocol to the Court by March 19, 2021. (ECF No. 161.) On March 12, 2021, the parties submitted an ESI protocol to the Court. (ECF No. 163.) On March 29, 2021, the Special Master entered an ESI protocol (the "ESI Protocol"). (ECF No. 166.) While the parties are not currently in the process of drafting an ESI protocol, Plaintiffs still appeal the Special Master's decision that documents be produced from each of its assignors. (*See* ECF No. 192 ("The parties are currently engaged in active discovery . . . and, except for one discovery matter that is on appeal to Judge Martinotti . . . all discovery issues are being managed by Special Master Cavanaugh.").)

opposed the appeal. (ECF No. 153.) On March 1, 2021, Plaintiffs filed a Motion for Leave to File a Reply Brief (ECF No. 157), and on March 2, 2021, Defendants responded (ECF No. 158).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a Special Master to "address pretrial and posttrial matters." Fed. R. Civ. P. 53(a)(1)(C). The Special Master must report his findings to the court that appointed him and serve a copy of his findings on each party. Fed. R. Civ. P. 53(e). Parties may file objections to the Special Master's order, report, or recommendations. Fed. R. Civ. P. 53(f)(2). A reviewing court must decide objections to the Special Master's factual findings and legal conclusions under the *de novo* standard of review. Fed. R. Civ. P. 53(f)(3)–(4). "The phrase 'de novo determination' . . . means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting) (citing *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967)). However, in deciding objections to procedural matters, a reviewing court may only set aside the Special Master's decision for an abuse of discretion. Fed. R. Civ. P. 53(f)(5).

Pursuant to the October 22, 2020 Order appointing the Special Master, any decisions of the Special Master are to be reviewed under the same standard as a magistrate judge's decision. (ECF No. 128 ¶ 6 ("The Special Master's decision resolving any dispute may be appealed to Judge Martinotti in the same manner . . . as a decision of a Magistrate Judge, in accordance with Local Civil Rule 72.1(c)(1) and Federal Rule of Civil Procedure 53(f)(3)–(5).").) Accordingly, the Court applies the same standard here as it would in reviewing an appeal from a magistrate judge. *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, Civ. A. No. 16-881, 2020 WL 487288, at *4 (D.N.J.

Jan. 30, 2020); *United States ex rel. Simpson v. Bayer A.G.*, Civ. A. No. 05-3895, 2021 WL 363705, at *3 (D.N.J. Feb. 2, 2021).

With respect to a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* Similarly, this Court's Local Rules provide "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days" and the District Court "shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's order if the order is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge). The burden of showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the appeal." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly

erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's ruling is "contrary to law" if it misinterpreted or misapplied applicable law. *Kounelis*, 529 F. Supp. 2d at 518; *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). "Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, Civ. A. No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006); *Callas v. Callas*, Civ. A. No. 147486, 2019 WL 449196, at *3 (D.N.J. Feb. 4, 2019) (reviewing and affirming magistrate judge's order on discovery dispute under the abuse of discretion standard); *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, Civ. A. No. 15-3271, 2018 WL 3993449, at *4 (D.N.J. Aug. 21, 2018) (same). "An abuse of discretion occurs 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.'" *Ebert v. Twp. of Hamilton*, Civ. A. No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2016) (quoting *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)).

## III.   DECISION

The Court begins with a brief introduction of the central point of this discovery dispute, *i.e.*, the parameters of the ESI Protocol. Defendants argue Plaintiffs have a duty to produce discovery from those that assigned their claims to Plaintiffs. (ECF No. 145 at 1.) Defendants contend that while Plaintiffs assert their claims through their assignors, they "refuse to accept the concomitant obligation to produce the discovery that those assignors would have been obliged to produce had the assignors asserted the same claims in their own right." (*Id.*) That is, Plaintiffs

contend they have no obligation to provide full discovery from all of their assignors. (*Id.*) In sum, Defendants requested the Special Master order Plaintiffs to provide discovery from each of its assignors. (*Id.*)

In response, Plaintiffs argue Defendants were seeking documents Plaintiffs did not possess. (ECF No. 146 at 1.) Plaintiffs submit they proposed in several conferences that the parties focus on "obtaining responsive documents from a subset of the 57 assignors, whose payments for insulin products represent 75% of the expenditures of Plaintiffs' assignors." (*Id.* at 2.) Relatedly, Plaintiffs assert they cannot bind their own assignors to obligations under the ESI Protocol and Defendants' request that Plaintiffs produce discovery from each and every assignor "is not proportional to the needs of the case." (*Id.*)

The Special Master found it would not be burdensome for Plaintiffs to obtain information from the 47 remaining assignors. (ECF No. 150 at 8.) Additionally, he found the Plaintiffs' proportionality argument unavailing, as aggregating the claims from their assignors does not protect Plaintiffs from responding to discovery requests. (*Id.* at 9.) Ultimately, the Special Master ordered Plaintiffs to produce the same documents and information from each assignor that Defendants would have been entitled had the assignors brought the lawsuit themselves. (ECF No. 150 at 8–9.)

On appeal, Plaintiffs argue their position is not that they "would not or could not produce documents from each assignor" but rather "doing so is disproportionate to the needs of the case." (ECF No. 152-1 at 4.) That is, "Plaintiffs allege that discovery from each of the 57 distinct entities will be costly and time consuming" and the "assignors are not likely to have the documents Defendants have requested." (*Id.* at 4–5.) Accordingly, Plaintiffs assert it would be "most efficient to start discovery with the larger, more sophisticated assignors" and then following that discovery,

"should it be determined that additional discovery is needed, conduct discovery from assignors with smaller claims." (*Id.* at 5.)

In response, Defendants argue the Special Master correctly granted its motion to compel the production of ESI from all 57 assignors because the overwhelming weight of authority supports the proposition that Plaintiffs have a duty to provide discovery from each of the assignors they represent, Plaintiffs' proportionality concerns are unavailing, and complete discovery as to all assignors is needed. (*See generally* ECF No. 153.)

In his Report, the Special Master noted "as a general proposition, our courts hold that a party bringing an assigned claim must produce discovery on the same basis as to which the defendants would have been entitled if an assignor had brought the claim directly." (ECF No. 150 at 5.) The Special Master further stated "[a] review of the cases cited by Defendants supports this seemingly settled proposition and Plaintiffs do not refute this." (*Id.*) In response, Plaintiffs cite *In re Whatley v. Canadian Pac. Ry. Ltd.*, Civ. A. No. 1:16-74, 2019 WL 6972405 (D.N.D. Dec. 19, 2019), to argue some courts have found an assignee-plaintiff has no obligation to provide discovery from its assignor. (ECF No. 152-1 at 4.)

*Whatley* did not hold, as Plaintiffs suggest, that a plaintiff-assignee has no obligation to provide discovery from an assignor. In *Whatley*, the plaintiff's claims, as here, were acquired by assignment from two entities, World Fuels and Irving. 2019 WL 6972405, at *1. The issue before the court in *Whatley* was "whether [p]laintiff, as assignee, ha[d] the same obligations regarding discovery that World Fuel[s] and Irving would have had were they bringing their claims directly." *Id.* The plaintiff argued documents from World Fuels and Irving were outside of its control. *See id.* The *Whatley* court observed a recent case, *MAO-MSO Recovery II, LLC v. Mercury Gen. Corp.*, Civ. A. No. 17-02525, 2019 WL 2619637 (C.D. Cal. May 10, 2019), supported the plaintiff's

8

position. *Id.* In examining that case, the court noted "[t]he *MAO-MSO* court cites the plain language of Rule 34 and Ninth Circuit law, reasoning that despite considerations of fairness, a [p]laintiff-assignee has no obligation to provide discovery from its assignor." *Id.* (citing 2019 WL 2619637, at *3). However, the court in *MAO-MSO* did not hold that a plaintiff-assignee has no obligation to provide discovery from its assignor. Instead, the court denied the defendant's motion to compel production of documents from the plaintiffs' assignors because the defendant's motion sought "an order requiring Plaintiffs to produce documents that are not within their possession, custody or control." *MAO-MSO*, 2019 WL 2619637, at *3. That is, because the defendants could not demonstrate "how an assignee is to produce documents that it has no legal right to obtain from the assignor," the court found plaintiff-assignees had no obligation to produce documents from the assignor. *Id.* Relying on *MAO-MSO*, the *Whatley* court similarly found that the plaintiff did not have to produce documents from an assignor because it had no control over those documents. *See* 2019 WL 6972405, at *2 (noting that "if [p]laintiff had the right to obtain these documents on demand, through the assignment agreement or otherwise, it would not have earlier applied to this Court for letters rogatory and/or a subpoena to obtain them"). Therefore, both *Whatley* and *MAO-MSO* only stand for the proposition that a defendant cannot obtain discovery from an assignor when the assignee does not have "possession, custody, or control" of the documents a defendant seeks to obtain from that assignor. Fed. R. Civ. P. 34(a). In opposition, Plaintiffs do not address the issue of control, as they argue "this was not the correct issue before the Special Master." (ECF No. 152-1 at 4 n.3.)

Plaintiffs' main argument on appeal is that discovery from each of the 57 distinct entities will be costly, time consuming, and disproportional to the needs of the case. (*See* ECF No. 152-1 at 4–7.) In the Report, the Special Master held the following regarding this argument:

9

> [Plaintiffs do not] fully articulate an argument as to *why* it would be
> unduly burdensome for Plaintiffs, who have contracted with the
> assignors to advance their claims and should presumably have
> known the lay of the land before bringing suit, to obtain the
> requested discovery. Indeed, Plaintiffs even concede that they are
> not objecting to the production but effectively seek to defer
> production, i.e., "If . . . the case reveals that additional discovery
> from assignor Plans beyond the subset is genuinely probative . . . the
> parties should confer and proceed appropriately then." (ECF No.
> 146 at 3.) Why this is feasible at a later date, but not now, is not
> articulated beyond Plaintiffs' unattributed assertion that the smaller,
> less sophisticated assignors are "not likely to have the [requested]
> documents." Plaintiffs propose producing discovery from 10 of the
> 57 assignors representing most of the claims so it is evident that
> these materials are available or have been secured. The Special
> Master does not think it constitutes a burden to obtain that
> information from the remaining 47.

(ECF No. 150 at 8.)

Plaintiffs argue *MAO-MSO* supports their position that discovery should only be taken

from the larger assignors at this point in the litigation. In *MAO-MSO*, plaintiffs brought claims

against defendants that plaintiffs obtained by assignment. 2019 WL 2619637, at *2. Defendants

moved to compel production of documents from plaintiffs' assignors, arguing plaintiffs "must

respond to discovery requests as if it were the assignor," while plaintiffs argued they lacked control

over the documents held by its assignors. *Id.* Plaintiffs represented that "only nine of the

approximately 80 assignments permit[ted] them access to [the] requested documents." *Id.* at *3.

As noted above, the *MAO-MSO* court denied defendants' motion "to the extent it seeks an order

requiring [plaintiffs] to produce documents that are not within their possession, custody or

control." *Id.* To address defendants' concern "that it should not be required to bear the burden of

obtaining documents from approximately 80 assignors," the court ordered the parties to meet and

confer to obtain the responsive documents. *Id.* at *4. Specifically, the court's order featured two

elements. First, the court ordered plaintiffs to produce all documents in their possession, custody,

or control, "including documents in the assignors' possession that [plaintiffs] have the legal right to obtain upon demand," that responded to defendants' requests for production. *Id.* Second, the court ordered the parties to meet and confer "regarding a joint approach to obtain other relevant responsive documents that are *likely* in the possession of the assignors," the efforts of which had to address five topics, including, as Plaintiffs point out, "prioritization of the assignors from which documents will be sought." *Id.* (emphasis added). But the *MAO-MSO* court did not limit discovery to only the larger assignors in the action as Plaintiffs ask the Court to do here. The court merely ordered plaintiffs to produce the documents they had a legal right to obtain and ordered the parties to address the priority of the assignors during the meet and confer process in determining which documents are likely in possession of the assignors. *See id.*

Plaintiffs further rely on *Blackrock Balanced Cap. Portfolio (FI) v. HSBC Bank USA*, Civ. A. No. 14-09366, 2016 WL 11187259 (S.D.N.Y. June 2, 2016), in both their opposition and proposed reply, to argue limited or staged discovery should be undertaken in this case, limited to 10 of the 57 assignors. (ECF No. 152-1 at 6; ECF No. 157-3 at 3.) However, that case is distinguishable from the facts underlying this discovery dispute. In *Blackrock*, the plaintiffs sued HSBC for breaches of contract, fiduciary duty, duty to avoid conflicts of interest, and the Streit Act, in connection with certain residential mortgage-backed securities trusts ("RMBS") plaintiffs purchased from HSBC. 2016 WL 11187259, at *1. HSBC sought to compel plaintiffs to produce document discovery from any prior RMBS certificate holder whose rights they intended to assert. *Id.* Plaintiffs argued they could not produce such documents because they were not within their custody or control so HSBC could not compel their production. *Id.* Even if HSBC could compel the documents' production, plaintiffs further claimed they would be unable to produce documents from "likely thousands of prior owners with whom [p]laintiffs have no relationship whatsoever."

*Id.* The Court held plaintiffs should bear the burden of discovery and ordered "limited discovery to determine how much third-party discovery will be proportional to the needs of the case" because plaintiffs showed discovery would be burdensome. *Id.*

Despite the discovery-based issues presented by the difficulties in tracking owners of RMBS certificates, the *Blackrock* court found that some discovery must take place because "[t]hird-party discovery might help HSBC to develop affirmative defenses by showing that prior owners had already relinquished any claim through a prior settlement or other event. It might also undermine plaintiffs' standing. The plaintiffs, too, may need to rely on third-party discovery to prove their damages." *Id.* at *3. The discovery order issued in *Blackrock* dealt primarily with identifying the prior owners of the RMBS certificates. *See id.* The court ordered plaintiffs to serve subpoenas to trace back other previous owners before meeting and conferring to discuss the remaining third-party discovery. *Id.* That is, because plaintiffs "made a compelling argument" that third-party discovery would be burdensome due to the difficulty in identifying previous owners of RMBS certificates that arises from the anonymous nature of RMBS transactions, the court ordered "a staged discovery process so that the parties can better assess whether third-party document discovery will be crucial to the case or a mere sideshow." *Id.*; *see also id.*, at *1 ("RMBS certificates trade anonymously on the open market, are not tracked by any unique identification number, and are sold by financial intermediaries who do not own them."). *Blackrock* is unlike this action because the identities of all the assignors are already known, and even if they were not, ascertaining those identities would not be so difficult as to require limited discovery on that issue. Plaintiffs have not argued, as the plaintiffs in *Blackrock* argued, that discovery from the remaining assignors would be "exceedingly costly" or "impossible." (*See* ECF No. 152-1 at 4.) Instead, Plaintiffs have argued discovery from each of the remaining assignors would be costly and time

consuming, because these smaller remaining assignors are "not likely to have the documents Defendants have requested." (*Id.* at 5.) That is, Plaintiffs merely argue for discovery limited to the 10 largest assignors, but if additional discovery is needed, to then conduct discovery with the smaller assignors. (*Id.*) Therefore, the same challenges facing the *Blackrock* court that required limited discovery are not present here.

The Special Master's Report demonstrates he thoroughly considered the arguments by both parties, examined cases that have previously decided the issues before the Court, and came to a reasoned decision in granting Defendants' request to compel production of documents from all assignors. The Court is convinced Plaintiffs have not demonstrated the Special Master abused his discretion or made a finding contrary to law in issuing his Report. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) ("A district judge may find a magistrate judge's decision 'clearly erroneous' when it is 'left with the definite and firm conviction that a mistake has been committed.'" (quoting *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996))); *Lenox Corp. v. Robedee*, Civ. A. No. 3:15-1654, 2016 WL 5106992, at *5 (D.N.J. Sept. 19, 2016) ("The burden of showing that a ruling is 'clearly erroneous or contrary to law rests with the party filing the appeal.'" (quoting *Marks*, 347 F. Supp. 2d at 149)). Accordingly, Plaintiffs' appeal is denied and the Special Master's Report is affirmed. The Court has considered Plaintiffs' proposed reply attached to its Motion for Leave to File a Reply Brief, however, because the Court is affirming the Special Master's Report, Plaintiffs' Motion is moot.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' appeal is **DENIED**, the Special Master's January 20, 2021 Report is **AFFIRMED**, and Plaintiffs' Motion for Leave to File a Reply Brief is **DENIED AS MOOT**.

Date: September 22, 2021                                  */s/ Brian R. Martinotti*
                                                         **HON. BRIAN R. MARTINOTTI**
                                                         **UNITED STATES DISTRICT JUDGE**