**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MSP RECOVERY CLAIMS SERIES, LLC, SERIES PMPI, MAO-MSO RECOVERY II, LLC, and MSPA CLAIMS 1, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, NOVO NORDISK INC., and ELI LILLY AND COMPANY,<br><br>Defendants. | Case No. 2:18-cv-02211 (BRM) (RLS)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is an appeal[1] (ECF No. 418) by Plaintiffs MSP Recovery Claims Series, LLC, Series PMPI, MAO-MSO Recovery II, LLC, and MSPA Claims 1, LLC's (collectively, "Plaintiffs") of Special Master Dennis M. Cavanaugh, U.S.D.J. (ret.)'s (the "Special Master") May 10, 2023 Order (ECF No. 361 (the "May 10, 2023 Order")) and January 29, 2024 Order and Opinion Denying Plaintiff's Motion for Reconsideration of the May 10, 2023 Order (ECF No. 417 (the "January 29, 2024 Order")), pursuant to Federal Rule of Civil Procedure 53(f) and Paragraph 6 of the Stipulation Regarding Appointment of Special Master (ECF No. 128[2]). Defendants Sanofi-

---

[1] Plaintiffs' filing is titled "Objection to Special Master's Orders" but was filed on the docket as a "Motion to Vacate" the Special Master's May 10, 2023 Order and January 29, 2024 Order. (*See* ECF No. 418.) The Court construes Plaintiffs' filing as an appeal from the Special Master's May 10, 2023 Order and his January 29, 2024 Order denying Plaintiffs' motion for reconsideration of his May 10, 2023 Order.

[2] On October 22, 2020, this Court entered an order appointing The Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.) as the Special Master in this action. (ECF No. 128.) That order set forth

Aventis U.S. LLC, Novo Nordisk Inc., and Eli Lilly and Company (collectively, "Defendants") filed an opposition to Plaintiff's appeal. (ECF No. 424.) Plaintiffs filed a belated reply in further support of their appeal.[3] (ECF No. 426.) Having reviewed the parties' submissions filed in connection with this appeal and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Plaintiffs' appeal (ECF No. 418) is **DENIED** and the Special Master's May 10, 2023 Order (ECF No. 361) and January 29, 2024 Order (ECF No. 417) are **AFFIRMED**.

## I.    BACKGROUND

This matter has been ongoing since 2018, and the factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted by the Court in its prior opinions: (1) granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs'

---

the briefing schedule in the event any party objected to the Special Master's orders. (*Id.* ¶ 6.) Pursuant to the order, parties were permitted to "object to, move to adopt, or move to modify" an order of the Special Master within fourteen (14) days of the order's entry on CM/ECF. (*Id.*) A party opposing the objection or motion is required to file a responsive brief within fourteen (14) days of the objection or motion's filing, and the moving party "may file a reply to an opposition within seven (7) days of the day the opposition was filed." (*Id.*) The order further provides that "[t]he Special Master's decision resolving any dispute may be appealed to Judge Martinotti in the same manner—and subject to the same deadlines and standards of review—as a decision of a Magistrate Judge, in accordance with Local Civil Rule 72.1(c)(1) and Federal Rule of Civil Procedure 53(f)(3)–(5)." (*Id.*)

[3] Both Plaintiffs' appeal and reply in further support of their appeal were untimely filed. The Special Master's Order and Opinion denying Plaintiffs' motion for reconsideration was filed on January 29, 2024. (ECF No. 417.) Plaintiffs filed untimely objections to the January 29, 2024 Order on February 13, 2024 (*see* ECF No. 418), one day after the fourteen-day deadline to file such objections (*see supra* n.2), which Plaintiffs concede (*see* ECF No. 426 at 3 n.1). Defendants timely filed an opposition to Plaintiffs' objections on February 27, 2024. (ECF No. 424.) Plaintiffs then filed an untimely reply on March 11, 2024 (ECF No. 426), six days after the seven-day deadline to file a such a reply (*see supra* n.2). Plaintiffs did not seek leave of Court to file belated objections or a belated reply to the Special Master's orders. However, because the Court prefers to decide issues on the merits rather than dismissing on a technicality, the Court will consider both of Plaintiffs' untimely filings for the purposes of this appeal, but the Court reminds Plaintiffs that they must timely submit any such filings that may be filed in this matter in the future.

Amended Complaint (ECF No. 89), and (2) granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 111). Therefore, the Court only includes the facts and procedural background relevant to this appeal.

Plaintiffs are entities who have been assigned claims from 57 Medicare Advantage Plans and Defendants are manufacturers of insulin products. (ECF No. 150 at 2.) The litigation involves allegations that Plaintiffs incurred damages resulting from overpayments made on behalf of the plans' beneficiaries for insulin products manufactured by Defendants. (*Id.*) This appeal arises from a discovery dispute between Plaintiffs and Defendants.

On May 10, 2023, the Special Master issued the May 10, 2023 Order addressing various discovery disputes between Plaintiffs and Defendants after hearing oral argument on these disputes at the May 5, 2023 conference. (*See generally* ECF No. 361.) Plaintiffs object to the Special Master's rulings on Issue 2 and Issue 4 in the May 10, 2023 Order.[4] (*See* ECF Nos. 361, 418, 426.) Issue 2 involved whether Plaintiffs "are required to file a statement concerning litigation funding as set forth in Local Rule 7.1.1" ("Issue 2"). (ECF No. 361 at 1.) Defendants argued Plaintiffs were required to file a Rule 7.1.1 statement, but Plaintiffs denied such a statement is required in this matter ("Issue 2"). (*Id.*) In the May 10, 2023 Order, the Special Master ordered Plaintiffs "to either submit a Local Rule 7.1.1 Statement or a certification setting forth why such a statement is unnecessary in this matter." (*Id.* at 3.) Plaintiffs chose the latter option and filed a letter attaching a certification from Plaintiffs' designated corporate representative, which states Plaintiffs "have not received any third-party litigation funding on a non-recourse basis necessitating disclosure" pursuant to Local Civil Rule 7.1.1 (the "Lopez Certification"). (*See* ECF No. 362.)

---

[4] Accordingly, the Court focuses on these two discrete issues to which Plaintiffs object, relevant to this appeal, and does not address the other issues addressed in the May 10, 2023 Order.

Issue 4 involved whether Plaintiffs had to produce certain additional documents in discovery including but not limited to "marketing materials" and "agreements and funding documents with litigation funders" ("Issue 4"). (ECF No. 361 at 2.) In a letter dated April 20, 2023 (the "April 20, 2023 Letter"), Defendants identified four categories of relevant documents allegedly missing from Plaintiffs' custodial document production and requested Plaintiffs produce those documents, which included "corporate formation documents, marketing materials, agreements and funding documents with litigation funders, and nonresponsive slipsheets." (*Id.*; ECF No. 417 at 2–3.) Plaintiffs argued such documents were not pulled in under the Technology Assisted Review ("TAR") protocol to which the parties agreed and that Defendants "waited too long to follow up on these requests[.]" (*Id.*) In the May 10, 2023 Order, the Special Master rejected Plaintiffs' arguments and ordered Plaintiffs to produce the documents Defendants requested in the April 20, 2023 Letter. (ECF No. 361 at 4.)

On May 24, 2023, Plaintiffs filed a motion for reconsideration, and/or alternatively for clarification, of the portion of the May 10, 2023 Order directing Plaintiffs to produce the Disputed Documents (related to Issues 2 and 4 discussed above). (ECF No. 366.) In their motion, Plaintiffs stated they would produce two categories of the documents requested in the April 20, 2023 Letter—the corporate formation documents and the nonresponsive slipsheets—but they objected to producing the other two categories—the marketing materials and litigation funding documents (the "Disputed Documents"). (ECF No. 366-1 at 2; *see also* ECF No. 417 at 3; ECF No. 418-1 at 4.) On June 16, 2023, Defendants filed an opposition to Plaintiffs' motion for reconsideration. (ECF No. 375.) On January 29, 2024, the Special Master denied Plaintiffs' motion for reconsideration, finding Plaintiffs failed to demonstrate any ground upon which a motion for reconsideration may be granted. (ECF No. 417.) Specifically, the Special Master found Plaintiffs:

(1) did not allege that there had been any intervening change in the controlling law; (2) "failed to present any 'new' evidence that was not available when [he] made his initial decision with respect to the requested documents"[5]; (3) did not set forth any relevant law that he allegedly overlooked in ordering production of the Disputed Documents; and (4) have not shown "a clear error of law or fact to prevent manifest injustice." (*Id.* at 10–13.) Further, the Special Master noted Plaintiffs' arguments in its motion for reconsideration essentially rehashed arguments they made during the May 5, 2023 conference, which arguments the Special Master rejected.[6] (*See id.* at 11.) Additionally, the Special Master found the case *Lawson v. Spirit AeroSystems, Inc.*, Civ. A. No. 18-01100, 2020 WL 1813395 (D. Kan. Apr. 9, 2020), on which Plaintiffs relied in their motion for reconsideration, did not compel a different result, noting first that Plaintiffs did not present *Lawson* to him during the May 5, 2023 conference, but finding that even if they had, this case is inapposite and would not have changed his ruling. (*Id.* at 12.) The Special Master also found no basis to order cost-shifting to Defendants, stating Plaintiffs did not provide him with any compelling reason to

---

[5] The Special Master concluded the Lopez Certification was not "new" evidence for purposes of Plaintiffs' motion for reconsideration because this information was known to Plaintiffs and available prior to the May 10, 2023 Order and "could have been provided to the Special Master at the May 5[, 2023] Conference." (ECF 417 at 11, 13.)

[6] *See* ECF No. 417 at 11 ("Plaintiffs' argument that Defendants' April 20 Correspondence was not a motion to compel was presented to the Special Master during the May 5[, 2023] Conference. Similarly, Plaintiffs argued at the May 5[, 2023] Conference that the requested documents are not responsive to Defendants' RFPs. The Special Master rejected these arguments and reiterates that the requested documents at issue in this motion for reconsideration—i.e., marketing materials and litigation funding materials—are sufficiently encompassed in Defendants' RFPs. Furthermore, Plaintiffs argued at the May 5[, 2023] Conference that they utilized a TAR protocol for document production and that ordering production of the requested documents would be disregarding the TAR protocol and essentially requiring a 100% recall rate. The Special Master also rejected any notion that the TAR protocol is a safe harbor to document production and that Plaintiffs have no obligation to produce responsive documents that were not identified by the TAR protocol.").

alter the common practice of the responding party bearing the costs associated with its document production. (*Id.* at 13.)

On February 13, 2024, Plaintiffs filed belated objections to the Special Master's January 29, 2024 Order (ECF No. 418; *see also supra* n.3), which the Court construes as an appeal from the Special Master's May 10, 2023 Order (ECF No. 361) and January 29, 2024 Order (ECF No. 417).[7] On February 27, 2024, Defendants filed an opposition to Plaintiffs' appeal. (ECF No. 424.) On March 11, 2024, Plaintiffs filed a belated reply in further support of their appeal. (ECF No. 426; *see also supra* n.3.) On March 13, 2024, Defendants filed a letter to the Court noting Plaintiffs' untimely objections and untimely reply filed without leave of Court and requesting the Court strike Plaintiffs' untimely reply. (ECF No. 427.) On March 14, 2024, the Court denied Defendants' request to strike Plaintiffs' untimely reply via a Text Order. (ECF No. 428.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a Special Master to "address pretrial and posttrial matters[.]" Fed. R. Civ. P. 53(a)(1)(C). The Special Master must report his findings to the court that appointed him and serve a copy of his findings on each party. Fed. R. Civ. P. 53(e). Parties may file objections to the Special Master's order, report, or

---

[7] Defendants argue Plaintiffs' appeal should only be construed as an appeal from the January 29, 2024 Order, but not the May 10, 2023 Order because Plaintiffs never formally appealed the May 10, 2023 Order and "the deadline long ago passed for it to challenge that ruling directly." (ECF No. 424 at 1.) Plaintiffs contend they are seeking a reversal of both the May 10, 2023 Order and January 29, 2024 Order, stating they chose to timely file a motion for reconsideration of the May 10, 2023 Order rather than file an objection to that order at that time, and that "[m]otions for reconsideration toll the time for appeals[.]" (ECF No. 426 at 2–3.) Accordingly, Plaintiffs assert their timely filed reconsideration motion tolled their time to appeal the May 10, 2023 Order and state that otherwise they "would have been forced to file two documents, a motion for reconsideration and an objection to the May 10, 2023 Order[,]" which "would be a waste of judicial resources, and could have led to conflicting opinions on the same issue." (*Id.*) The Court need not decide whether the timing for Plaintiff's appeal from the May 10, 2023 Order was tolled and/or is timely because even assuming it was filed timely, it fails on the merits.

recommendations. Fed. R. Civ. P. 53(f)(2). A reviewing court must decide objections to the Special Master's factual findings and legal conclusions under the *de novo* standard of review. Fed. R. Civ. P. 53(f)(3)–(4). "The phrase '*de novo* determination' . . . means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting); *see United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967) (observing that "review de novo" means "that the court should make an independent determination of the issues"). However, in deciding objections to procedural matters, a reviewing court may set aside the Special Master's decision only for an abuse of discretion. Fed. R. Civ. P. 53(f)(5). The Special Master's management of the discovery process, as a magistrate judge's would be, "is entitled to great deference." *See Schiano v. MBNA*, Civ. A. No. 05-01771, 2009 WL 1416040, at *3 (D.N.J. May 19, 2009); *Honeywell v. Minolta Camera Co.*, Civ. A. No. 87-04847, 1990 WL 66182, at *1 (D.N.J. May 15, 1990).

Pursuant to the October 22, 2020 Order appointing the Special Master, any decisions of the Special Master are to be reviewed under the same standard as a magistrate judge's decision. (ECF No. 128 ¶ 6 ("The Special Master's decision resolving any dispute may be appealed to Judge Martinotti in the same manner . . . as a decision of a Magistrate Judge, in accordance with Local Civil Rule 72.1(c)(1) and Federal Rule of Civil Procedure 53(f)(3)–(5).").) Accordingly, the Court applies the same standard here as it would in reviewing an appeal from a magistrate judge. *See, e.g.*, *United States ex rel. Simpson v. Bayer A.G.*, Civ. A. No. 05-03895, 2021 WL 363705, at *3 (D.N.J. Feb. 2, 2021); *In re Mercedes-Benz Emissions Litig.*, Civ. A. No. 16-00881, 2020 WL 487288, at *4 (D.N.J. Jan. 30, 2020).

With respect to a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "The district judge . . . must consider timely objections and modify

or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Similarly, this Court's Local Rules provide "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days" and the District Court "shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's order if the order is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function"). The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004); *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 (D.N.J. 2022). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petrol. Ltd. v. Emps. Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's ruling is "contrary to law" if it misinterpreted or misapplied applicable law. *Kounelis*, 529 F. Supp. 2d at 518; *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). "Where the appeal seeks review of a matter within the

exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, Civ. A. No. 05-05641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006); *Callas v. Callas*, Civ. A. No. 14-07486, 2019 WL 449196, at *3 (D.N.J. Feb. 4, 2019) (reviewing and affirming magistrate judge's order on discovery dispute under the abuse of discretion standard); *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, Civ. A. No. 15-03271, 2018 WL 3993449, at *4 (D.N.J. Aug. 21, 2018) (same). "An abuse of discretion occurs 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.'" *Ebert v. Twp. of Hamilton*, Civ. A. No. 15-07331, 2016 WL 6778217 at *2 (D.N.J. Nov. 15, 2016) (quoting *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)).

## III.    DECISION

Plaintiffs object to the Special Master's rulings related to Issues 2 and 4, and argue, among other things: (1) Defendants' two April 20, 2023 letters "regarding documents Defendants believed were missing from Plaintiffs' (not Assignors') custodial document production and issues they had with litigation funding disclosures (the "April 2023 Letters") were not motions to compel, and had Defendants been required to file a motion to compel, they would not have been able to articulate a compelling need for the Disputed Documents; (2) Defendants waited too long to follow up regarding the Disputed Documents; (3) Defendants have not shown that the Disputed Documents are relevant, nor that they are responsive to any of their Requests for Production ("RFPs"), nor that they are proportional to the needs to the case, nor have they demonstrated the

9

requisite good cause for these documents to be produced[8]; (4) Defendants' request for the litigation funding documents was rendered moot when Plaintiffs filed the Lopez Certification; (5) the Lopez Certification mooted the need for any additional discovery regarding litigation financing because it certified that the three entities—Virage Capital Management, RD Legal Finance, and Brickell Key Investments—were not third-party litigation financers but rather are members of the Plaintiffs; and (6) the Special Master erred in granting Defendants additional discovery on litigation financing—which he said, among other things, "was necessary in order to assist Defendants in determining who the real parties in interest are, as well as for their 'defenses' of champerty and maintenance"—because Defendants did not plead the specific defenses of champerty and maintenance in their Answers, though Plaintiffs acknowledge Defendants raised these defenses in their motions to dismiss. (ECF Nos. 418-1, 426.) Plaintiffs further contend Defendants' request for the Disputed Documents is an "attack on the agreed upon ESI/TAR Protocol" and that the May 10, 2023 Order improperly "expands the scope of production, which undermines the agreed-upon [ESI/TAR] protocol and imposes an undue burden on Plaintiffs that is not proportional to the needs of the case." (ECF No. 418-1 at 10.) Accordingly, Plaintiffs request the Court sustain their objection and reverse the Special Master's May 10, 2023 Order as to the Disputed Documents, or, alternatively, to require Defendants to pay for this discovery. (*Id.* at 19.)

Defendants argue the Special Master did not clearly err in requiring Plaintiffs to produce the Disputed Documents. (ECF No. 424.) Specifically, Defendants argue: (1) they were not required to file a motion to compel because Plaintiffs "agreed that the parties would cover this

---

[8] More specifically, Plaintiffs argue the requested marketing materials "are neither relevant nor proportional to the needs of this case" and the requested litigation funding documents "are not responsive to a single RFP, relevant to this case, nor ordered to be produced upon a demonstration of good cause which is required under relevant case law." (ECF No. 418-1 at 14–15.)

dispute at the May 5[, 2023] status conference, even though no motion to compel had been filed"; conceded these deficiencies existed[9]; and have not provided any "support for the notion that Defendants were required to file a formal motion to compel for documents that are plainly relevant and responsive"; (2) the Special Master correctly rejected Plaintiffs' claim that Defendants waited too long to follow up regarding the Disputed Documents because they "could not know in advance that [Plaintiffs] would improperly withhold these materials from its productions" and "[w]hen it became clear that [Plaintiffs] had in fact done so prior to depositions, Defendants promptly raised the issue with [Plaintiffs]"; (3) the Disputed Documents are within the scope of discovery and are relevant, responsive to pre-existing RFPs, and not unduly burdensome nor disproportional to the needs to the case; (4) the Special Master correctly held that the Lopez Certification did not moot Defendants' request for litigation funding documents because Defendants identified documents suggesting certain litigation-funding entities "have intimate involvement in Plaintiffs' litigation decision-making"[10]; and (5) Plaintiffs' argument that Defendants cannot be granted discovery based on defenses they have not pled in their Answers was not raised in Plaintiffs' motion for reconsideration and therefore "cannot be considered by this Court in reviewing the Special

---

[9] Defendants assert that during the May 5, 2023 conference with the Special Master, Plaintiffs "confirmed that it had not turned over all responsive documents in the relevant categories" but rather "insisted that it had satisfied its obligations because these documents had not been collected as part of the production it made using a [TAR] protocol." (ECF No. 424 at 3–4 (citing ECF 366-1 at 45, 49, 51–52).)

[10] Defendants state "[Plaintiffs'] document productions, corporate disclosures, and publicly filed SEC disclosures make clear that at least three entities—Virage Capital Management, RD Legal Finance, and Brickell Key Investments—have financial interests in this litigation and have been involved in [Plaintiffs'] negotiations with assignors" (ECF No. 424 at 14), and Plaintiffs do not dispute these facts. Defendants also note that the websites of these three entities "make clear that their core business offering is 'litigation funding' or 'litigation finance,'" and accordingly Defendants contend that although Plaintiffs assert "these 'litigation financiers' are not—despite all appearances—litigation funders, Defendants are entitled to test that representation with discovery." (*Id.* at 14–15, 14 n.4.)

Master's January 29, 2024 Order"; moreover, Plaintiffs cannot dispute that they have been on notice of Defendants' champerty and maintenance arguments for years as "Defendants expressly raised those arguments over five years ago in their motion to dismiss[,]" and, in any event, Defendants' pled defenses "squarely encompass the doctrines of champerty and maintenance." (*Id.*) Defendants also contend Plaintiffs' appeal "relies almost exclusively on arguments that it already made and that the Special Master rightly rejected—twice." (*Id.* at 2.) Additionally, Defendants assert the Special Master has rejected Plaintiffs' argument regarding the purported "attack on the agreed upon ESI/TAR Protocol" multiple times. (*Id.* at 11.) Defendants further assert "[w]here, as here, Defendants have identified specific bases for concluding that responsive documents were not produced, requiring production is not 'tantamount to a rejection of the TAR protocol' or akin to 'requiring a 100% recall rate'" and that, in any event, "the Special Master was correct to find that the TAR protocol does not absolve [Plaintiffs] of its obligation to produce responsive documents." (*Id.*) Therefore, Defendants submit that the Court should overrule Plaintiffs' objections. (*Id.* at 19.)

Here, the Court does not find the portion of the Special Master's May 10, 2023 Order related to the Disputed Documents was clearly erroneous or contrary to law.[11] The Court likewise does not find the Special Master's January 29, 2024 Order denying Plaintiffs' motion for reconsideration was clearly erroneous or contrary to law. With respect to the marketing materials, the Court finds these documents are relevant and responsive to Defendants' RFPs 1 and 5, which provide in relevant part:

> **Request No. 1:** All Documents concerning any assignment of claims to [Plaintiffs] from any Assignor, including but not limited to . . . (ii) agreements or contracts governing the

---

[11] Because Plaintiffs do not object to the Special Master's other rulings, unrelated to the Disputed Documents, in the May 10, 2023 Order, the Court does not discuss or address those other rulings herein as those issues are not on appeal.

distribution of any financial recoveries received, or that may be received, by [Plaintiffs] in connection with asserting claims or making recoveries on behalf of any Assignor; (iii) Documents discussing the scope, limitations, terms[,] . . . or purpose of any such assignment; (iv) Documents regarding the rights of assignee to an assignment of claims, the merits of any assigned claims, and any obligations assignee owes the alleged Assignor for the assignment of claims; . . . (vi) Documents concerning any efforts by [Plaintiffs] to acquire the Assignments; and (vii) Document[s] relating to any projection or estimate by [Plaintiffs] of the recovery, by litigation, settlement or otherwise, of the recovery on the assigned claims or of its or any Assignees' share of the recovery; . . .

**Request No. 5:** All Documents containing or reflecting communications between [Plaintiffs] and any Person from which [Plaintiffs] unsuccessfully sought to obtain an assignment of claims that could cover the allegations of the Complaint.

(ECF No. 418-1, Ex. B at 7–8, 10.) In the April 2023 Letters, Defendants followed up with Plaintiffs regarding their productions and requested Plaintiffs produce "all marketing materials (including presentations, brochures, and emails that [Plaintiffs] use[] to solicit assignment of claims) to assignors whose claims [Plaintiffs] have pursued in this litigation" and stated these materials are responsive to their RFPs "as those communications relate to the assignment of claims." (ECF No. 418-1, Ex. A at 3.) Defendants also noted Plaintiffs "produced very few documents in this category" and identified specific examples of certain marketing documents produced, which appeared to be missing their attachments in the productions, prompting Defendants' follow-up request. (*See id.*) Even though the specific words "marketing materials" do not appear in the relevant RFPs, this does not obviate the need for Plaintiffs to comply with their discovery obligations and produce relevant and responsive documents, whether or not those documents were pulled in using the TAR protocol. "[I]t is well established that the Rule 26 relevancy requirement is to be construed 'broadly and liberally[.]'" *UBS Fin. Servs., Inc. v. Ohio Nat'l Ins. Co.*, Civ. A. No. 18-17191, 2021 WL 9220193, at *3 (D.N.J. Jan. 22, 2021) (citing *Berardino v. Prestige Mgmt. Servs., Inc.*, Civ. A. No. 14-03492, 2017 WL 9690965, at *2 (D.N.J. Dec. 8, 2017). Additionally, "[t]he Federal Rules of Civil Procedure make clear that

'[i]nterrogatories and production requests should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request[.]'" *Joaquin v. Lonstein L. Offs., P.C.*, Civ. A. No. 15-08194, 2019 WL 399136, at *3 (D.N.J. Jan. 31, 2019) (first alteration in original) (quoting *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015)); *Bracey v. Valencia*, Civ. A. No. 19-01385, 2022 WL 1570812, at *13 (W.D. Pa. May 18, 2022) ("[T]he obligation to provide candid objections and identify responsive documents cannot be required to turn on the use of 'magic words' to obtain clearly relevant discovery." (citations omitted)); *Younes*, 312 F.R.D. at 709 ("[T]he federal rules do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery[,]" but rather "[t]he 'obligation on parties and counsel to come forward with relevant documents requested during discovery is "absolute."'" (citations omitted)).

After reviewing the parties' submissions and the relevant case law, the Court finds Defendants' tailored request for marketing materials to Plaintiffs' assignors are relevant and responsive to Defendants' RFPs 1 and 5 as those communications relate to the assignment of Plaintiffs' claims. Plaintiffs here are assignees seeking to recover damages they allege Defendants caused, both individually and collectively. Plaintiffs also contend that the health plans from which they received their assignments suffered financial harm because of Defendants' alleged pricing scheme to unlawfully raise the purchase price of insulin. Accordingly, Plaintiffs' marketing materials to their assignors are relevant to Plaintiffs' claims stemming from those assignments.

Further, the Court does not find that Defendants' request for marketing materials to Plaintiffs' assignors is unduly burdensome or disproportional to the needs of the case because Defendants tailored this request to all marketing materials *to assignors whose claims Plaintiffs have pursued in this litigation*. Moreover, Plaintiffs have not specified how this request is

burdensome or disproportionate to the needs of the case. In claiming undue burden, Plaintiffs as the party resisting discovery "must demonstrate 'specifically' how the request is burdensome." *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980)). "Importantly, the Third Circuit has affirmatively adopted this standard." *Id.* (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Plaintiffs have failed to specifically demonstrate how Defendants' request for marketing materials is burdensome. They have not submitted any facts, affidavits, or other evidence to show the nature of the claimed undue burden. Additionally, Plaintiffs have not represented that they would not be able to promptly and efficiently collect and produce this narrow category of targeted documents, nor, alternatively, that such documents do not exist. Indeed, Plaintiffs have not stated that they have no such marketing materials.[12] Accordingly, Plaintiffs' objections related to the requested marketing materials are overruled, and Plaintiffs must promptly produce any such relevant and responsive marketing materials they may have, whether or not those documents were pulled in using TAR.

With respect to the litigation funding documents, the Court finds these too are responsive to Defendants' RFP 1 and are relevant in determining the real party in interest for this litigation

---

[12] Rather, when asked at the May 5, 2023 conference whether they have turned over relevant documents they have within Defendants' requested categories, Plaintiffs' counsel responded "no." (*See* ECF 366-1 at 50–51 ("JUDGE CAVANAUGH: From what I can see here, specifically, it says Defendants are requesting certain corporate formation documents, marketing materials, agreements and funding documents with litigation funders, and nonresponsive slip sheets. . . . And Mr. Bertran [referring to Plaintiffs' Counsel], is it your position that you've turned over what you have that's relevant within those categories? MR. BERTRAN: No.").) Based on this statement, it appears Plaintiffs may be aware of relevant documents they have that are responsive to Defendants' requests, which they have not yet produced, without a sufficient reason for withholding such documents.

and likewise are relevant to Defendants' defenses of champerty and maintenance.[13] Defendants have identified documents suggesting three entities—Virage Capital Management, RD Legal Finance, and Brickell Key Investments—have intimate involvement in Plaintiffs' litigation decision-making, and those entities' websites indicate they are involved in litigation funding and/or litigation financing. (*See* ECF No. 417 at 13; ECF No. 424 at 10, 14–15, 14 n.4.) Plaintiffs do not dispute this; rather, they argue that because they filed the Lopez Certification[14]—which states Plaintiffs "have <u>not</u> received any third-party litigation funding on a non-recourse basis necessitating disclosure" (ECF No. 362-1 at 2)—this issue is mooted and "should have put an end to all third-party litigation financing discovery" (*see* ECF No. 418-1 at 13–17; ECF No. 426 at 5–6).[15] Plaintiffs cited to the *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination*

---

[13] Plaintiffs argue the Special Master erred in ordering them to produce litigation funding documents as relevant to Defendants' champerty and maintenance arguments because Defendants have not specifically pled those defenses in their Answers. (ECF No. 418 at 3, 18–19; ECF No. 426 at 6–8.) However, Plaintiffs did not raise this argument in their motion for reconsideration before the Special Master (*see* ECF No. 366), and therefore the Court does not consider this in reviewing the Special Master's January 29, 2024 Order denying Plaintiffs' motion for reconsideration. Defendants note Plaintiffs "did raise this argument in a separate motion that the Special Master has not yet resolved." (ECF No. 424 at 16 n.5 (citing ECF 378 at 4–5).) Accordingly, because this is an issue that is actively pending adjudication before the Special Master, the Court declines to address it herein.

[14] Plaintiffs appear to dispute that they had to submit this certification at all, but since they did submit it in response to the Special Master's May 10, 2023 Order, to the extent Plaintiffs are objecting to the Special Master's ruling ordering them to submit this Rule 7.1.1 certification, that objection is denied as moot.

[15] Additionally, Plaintiffs note that as to one Plaintiff, MAO-MSO Recovery II, LLC, "Plaintiffs advised, in their Motion for Leave to file Third Amended Complaint . . . that they have dropped that Plaintiff because its assignor is no longer at issue in the instant case" and therefore "Plaintiff MAO-MSO Recovery II, LLC was no longer in this case," and accordingly discovery as to that Plaintiff is "no longer required[.]" (ECF No. 418-1 at 17.) However, the Court notes that no formal stipulation has been filed on the docket dismissing MAO-MSO Recovery II, LLC as a plaintiff in this action. Additionally, it does not appear this specific issue was raised before the Special Master, so the Court declines to address it herein. Instead, Plaintiffs may raise this issue with the Special Master as they see fit or submit the appropriate proposed dismissal order.

*Products Liability Litigation* case to argue that Defendants must demonstrate good cause as to why they are entitled to discovery, but this case is not persuasive on this point because in that case, the Court clarified that it was "not ruling that litigation funding discovery is off-limits in all instances." 405 F. Supp. 3d 612, 615 (D.N.J. 2019). Rather, the *Valsartan* court stated it would order such discovery "only if good cause exists to show the discovery is relevant to claims and defenses in the case[,]" *e.g.*, "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist." *Id.* Here, the Court finds good cause exists for Defendants to conduct limited discovery into litigation funding, particularly as it relates to the entities Virage Capital Management, RD Legal Finance, and/or Brickell Key Investments, to the extent any such documents exist, because Defendants have identified documents suggesting that these three entities have intimate involvement in Plaintiffs' litigation decision-making. Tellingly, Plaintiffs have not argued otherwise, nor have they argued that no such litigation funding documents exist. Accordingly, Plaintiffs' objections related to the requested litigation funding documents are also overruled.

Lastly, with respect to Plaintiffs' request for cost-shifting related to the discovery of the Disputed Documents, Plaintiffs do not articulate any basis for cost-shifting, and therefore that request is denied. As the Special Master noted in the January 29, 2024 Order, "[t]he common practice is for the responding party to bear the costs associated with its document production[,]" and Plaintiffs have not provided any compelling reason for why this common practice should be altered here. (*See* ECF No. 417 at 13); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]"); *Juster Acquisition Co., LLC v. N. Hudson*

*Sewerage Auth.*, Civ. A. No. 12-03427, 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013) ("There is a general presumption that the responding party must bear the expense of complying with discovery requests. Therefore, the responding party has the burden of proof on a motion for cost[-]shifting. To that end, cost-shifting should only be considered when electronic discovery imposes an undue burden or expense on the responding party. As a preliminary matter, [c]ost-shifting is potentially appropriate only when inaccessible data is sought." (second alteration in original) (citations and quotation marks omitted)); *Zeller v. S. Cent. Emergency Med. Servs., Inc.*, Civ. A. No. 13-02584, 2014 WL 2094340, at *8 (M.D. Pa. May 20, 2014) ("A court may order a cost-shifting protective order only upon motion of the responding party to a discovery request and 'for good cause shown.' The responding party bears the burden of proof on a motion for cost-shifting."). Plaintiffs have failed to meet their burden of showing why cost-shifting would be appropriate here.

The Court concludes the Special Master's May 10, 2023 Order and January 29, 2024 Order demonstrate he thoroughly considered both parties' arguments and written submissions, examined the relevant case law, and came to a reasoned decision in ordering Plaintiffs to produce the Disputed Documents and denying Plaintiffs' motion for reconsideration of that decision. Additionally, based upon a *de novo* review of the Special Master's May 10, 2023 Order and January 29, 2024 Order, the Court finds no basis to reverse these two orders as Plaintiffs have failed to show that either the Special Master's May 10, 2023 Order or his January 29, 2024 Order were clearly erroneous or contrary to law, and the circumstances here do not provide this Court "with the definite and firm conviction that a mistake has been committed." *Dome Petrol. Ltd.*, 131 F.R.D. at 65 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008); *see also Lenox Corp. v. Robedee*, Civ. A. No. 15-

01654, 2016 WL 5106992, at \*5 (D.N.J. Sept. 19, 2016) ("The burden of showing that a ruling is 'clearly erroneous or contrary to law rests with the party filing the appeal.'" (quoting *Marks*, 347 F. Supp. 2d at 149)).

Therefore, the Special Master's May 10, 2023 Order and January 29, 2024 Order are **AFFIRMED**, and Plaintiffs' objections to same are overruled.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' appeal (ECF No. 418) is **DENIED**, and the Special Master's May 10, 2023 Order (ECF No. 361) and January 29, 2024 Order (ECF No. 417) are **AFFIRMED**.

Date: September 6, 2024                          */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**